| SIDNEY B. KOEPPEL | * | CIVIL ACTION NO.:  2:20-cv-1623 |
| | * | |
| VERSUS | * | DISTRICT JUDGE: |
| | * | |
| ROBINHOOD MARKETS, INC., | * | MAGISTRATE JUDGE: |
| ROBINHOOD FINANCIAL, LLC, and | * | |
| ROBINHOOD SECURITIES, LLC | | JURY TRIAL DEMANDED |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

NOW INTO COURT, through undersigned counsel, comes Plaintiff Sidney B. Koeppel (hereinafter "Plaintiff"), who respectfully represent the following:

## I.     PARTIES AND CITIZENSHIP

### 1.

Made plaintiff herein is Sidney B. Koeppel, who is a natural person over the age of eighteen (18) and a citizen of the State of Louisiana.

### 2.

Made Defendants herein (hereinafter jointly referred to as "Robinhood") are:

a.  Robinhood Markets, Inc., is a corporation, incorporated and domiciled in the State of Delaware. Robinhood Markets, Inc., is a financial services holding company.

b.  Robinhood Financial, LLC, is a limited liability company incorporated and domiciled in the State of Delaware. It is a subsidiary of and 100% owned by Robinhood Markets, Inc. Robinhood Financial, LLC, is registered broker with the U.S. Securities and Exchange

Commission and a member of the Financial Industry Regulatory Authority, Inc., (hereinafter "FINRA"). It maintains a clearing arrangement with Robinhood Securities, LLC.

c. Robinhood Securities, LLC, a limited liability company, incorporated and domiciled in the State of Delaware. Upon information and belief, it is a subsidiary of Robinhood Markets, Inc., which is the only member of the LLC. Robinhood Securities, LLC, is a registered broker-dealer of securities with the U.S. Securities and Exchange Commission, as well as a member of FINRA.

## II.  JURIDICTION

### A.  DIVERSITY JURISDICTION UNDER 28 U.S.C. 1332(a)

3.

Diversity is proper under 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, excluding interest and costs. According to 28 U.S.C. §1332(a), this Honorable Court maintains "original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between… citizens of different States."

4.

Plaintiff is a natural citizen of and domiciled in the State of Louisiana.

5.

Defendant Robinhood Markets, Inc., is incorporated in Delaware and maintains a principal place of business in California. Therefore, under 28 USC 1332 (c)(1), Robinhood Markets, Inc., is a citizen of Delaware and California.

6.

Defendant Robinhood Financial, LLC, is incorporated in Delaware and maintains a principal place of business in California. Therefore, under 28 USC 1332 (c)(1), Robinhood Financial, LLC, is a citizen of Delaware and California.

7.

Robinhood Securities, LLC, is incorporated in Delaware and maintains a principal place of business in California. Therefore, under 28 USC 1332 (c)(1), Robinhood Securities is a citizen of Delaware and California.

8.

Since Plaintiff is a citizen of the State of Louisiana and all Defendants are a citizens of different states from Plaintiff, complete diversity exists between the parties to this action.

9.

Plaintiffs' damages exceed $75,000, exclusive of interests and costs.

### III.  VENUE

#### 10.

Venue is proper pursuant to 28 USC §1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the territory of the U.S. District Court for the Eastern District of Louisiana, within the State of Louisiana.

### IV.  ALLEGATIONS

#### 11.

Robinhood provides "commission-free" trades in stocks, funds and options using an online, cloud-based platform for individual customers and/or users, including Plaintiff Sidney B. Koeppel, as an alternative to the traditional business conducted by in person, by e-mail, or by telephone

#### 12.

Robinhood publicly advertises its trading platform as state of the art, exceptionally fast and the future of the financial services industry. Robinhood states that trades need to be made exceptionally fast because:

> "In the stock market, a fraction of a second can mean the difference between a profit and a loss. Our team has built low-latency trading systems used by some of the world's largest financial institutions, and we're bringing that expertise to Robinhood. As a Robinhood customer, your self-directed orders will receive the best possible trade execution."

13.

On Monday March 2, 2020, the Dow Jones Industrial Average rose over 1,294 points, the S&P 500 rose 136 points, and the Nasdaq rose 384 points in what was the biggest ever point gain in a single day in the markets.

14.

On the same date, Robinhood's entire trading platform was completely inaccessible and unavailable to all of its customers and/or users, including Plaintiff Sidney B. Koeppel. Customers and/or users, including Plaintiff Sidney B. Koeppel, were unable to access or use the Robinhood's services to buy, sell or trade securities during this tremendous rise in the markets. Additionally, these customers and/or users, Plaintiff Sidney B. Koeppel, could not access their cash, securities and/or other property kept on or managed through the Robinhood platform. Various Robinhood platform outages continued through and including March 9, 2020.

15.

In a March 2, 2020 email to its customers and/or users Robinhood stated, "This morning, starting at 9:33 AM ET, we started experiencing downtime across our platform. These issues are affecting functionality on Robinhood, including your ability to trade."

16.

It was not until 2:19 am on March 3, 2020 that Robinhood announced publically on its Twitter account that, "Robinhood is currently back up and running. We're testing through the night, and you may observe some downtime as we prepare for tomorrow."

17.

Robinhood's customers and/or users, including Plaintiff Sidney B. Koeppel, were not able to access Robinhood's platform to engage in any trading activity, to access their funds kept

on the platform, to transfer funds onto the system, or to transfer funds off the system for all but 3 minutes of New York Stock Exchange trading hours, 9:30am until 4:00pm on March 2, 2020. There were additional outages of Robinhood's platform on March 3, 2020.

18.

On March 3, 2020, in a blog post on Robinhood's website, Robinhood's co-CEOs admitted liability and that it was Robinhood itself which was solely responsible for their complete failure: "We now understand the cause of the outage was stress on our infrastructure—which struggled with unprecedented load. That in turn led to a "thundering herd" effect—triggering a failure of our DNS system." As such, Robinhood admits that the platform outages were due to its own failures and expressly waive any defense related to failures of the platform being out Robinhood's control.

19.

On or about March 3, 2020 Robinhood gave Robinhood Gold customers, including Plaintiff Sidney B. Koeppel, a credit for three months of the Gold subscription fee, amounting to $15.

20.

Robinhood customers and/or users, including Plaintiff Sidney B. Koeppel, were not able to contact Robinhood during the outages, or Robinhood failed to respond to inquiries from customers and/or users. Robinhood customers and/or users, including Plaintiff Sidney B. Koeppel, were left with no recourse and were instead in the position of simply having to wait until Robinhood's platform was back up and running.

21.

By offering trading services to customers and/or users, Robinhood assumed a duty to provide a platform and services equipped to handle reasonably foreseeable customer demands and market conditions such as those which occurred on March 2, 2020 and thereafter. Plaintiff Sidney B. Koeppel reasonably understood that Robinhood would undertake this duty. Robinhood failed in its duty to Plaintiff members due solely to its own failures. Robinhood's failures are even more serious given the magnitude of the outages, the absence of alternative means for customers and/or users to protect their investments, and Robinhood's lack of communication and customer support.

22.

Per the Financial Industry Regulatory Authority ("FINRA") regulations, Robinhood had a duty to develop, design, test and monitor their services. Additionally, Robinhood had a duty to create and implement a written business continuity plan outlining procedures to be followed in the event of an emergency or business disruption. As a FINRA Member, Robinhood had a duty to create procedures that would reasonably assist Robinhood in meeting its obligations to its customers and/or users during an emergency or disruption in Robinhood service.

23.

More specifically, FINRA Rule 5310 entitled "Best Execution and Interpositioning" states that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully." Robinhood failed in these duties when it failed to provide the platform wherein its customers and/or users could even place orders. For this reason, Robinhood has breached its obligations and caused Plaintiff substantial damages due solely to Robinhood's own failures.

24.

Robinhood customers and/or users, including Plaintiff Sidney B. Koeppel, that held options contracts during Robinhood's platform failures and outages were unable to execute buy and/or sell orders for those contracts. This meant that customers and/or users were not able to execute the contracts at a gain or to mitigate losses. Given that most option contacts decrease in value as they approach expiry, customers and/or users, including Plaintiff Sidney B. Koeppel, who held short-dated option contracts were particularly damaged. Additionally, Robinhood customers and/or users, including Plaintiff Sidney B. Koeppel, who held short positions during the outage were unable to mitigate their losses as stocks surged. These are just some examples of damages sustained due to Robinhood's own failures.

25.

Beginning on or about March 26, 2020, Robinhood sent misleading correspondence to customers and/or users, including Plaintiff Sidney B. Koeppel, that purported to offer remuneration for Robinhood's platform failures. This remuneration, which was in the form of a "$838.61 goodwill credit," was offered to Plaintiff Sidney B. Koeppel in exchange for a release of any and all claims against Robinhood ("Correspondence" attached as Exhibit 2).

26.

Calling the offered remuneration a "goodwill credit" is misleading on its face, as the offer was not a "goodwill credit," but rather an offer of remuneration made to extinguish claim. The Correspondence did not include any mention or notice of the existence of a pending class action, which renders the correspondence misleading with respect to Robinhood seeking to obtain a waiver of Plaintiff's legal claims.

27.

Furthermore, the remuneration offered by Robinhood via the Correspondence is grossly inadequate to compensate Plaintiff Sidney B. Koeppel for his damages. In fact, upon information and belief, the fee for a customer and/or user to transfer their funds from Robinhood to another firm or trading platform is $75, or almost 10% of the "$838.61 goodwill credit" amount.

## V.     CAUSES OF ACTION

### A.     NEGLIGENCE

28.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

29.

Defendants are liable to Plaintiff for negligence, including pursuant to Louisiana Civil Code article 2315, which includes, a failure to exercise reasonable care in the maintenance and support of its online trading platform and services, to prevent or timely correct foreseeable system failures and outages. This duty includes, *inter alia*, designing, maintaining, and testing Defendants' trading platform to ensure that the platform is adequately secure, protected, and prepared for an increase in customer trading volume and user engagement, such as occurred on March 2, 2020. Defendants had a duty to provide a system and platform robust enough to handle all possible reasonable volumes of trading of securities by customers and/or users and have a backup system to handle outages. Defendants' duty further includes providing Plaintiff with alternative forms of trading when Defendants' mobile trading application was inaccessible; for

instance, providing its customers with a phone number to call in order to execute various trades or to have funds transferred.

30.

Defendants breached their duty to exercise reasonable care in safeguarding and protecting Plaintiff's assets from the extended system failures experienced on March 2, 2020 and March 3, 2020 and during additional outages. Defendants further breached their duty by failing to provide adequate support to the trading platform to ensure that it could continue to function during an increase in trading volume and user engagement.

31.

Defendants' negligence was the direct and proximate cause of the damages and financial losses suffered by Plaintiff Sidney B. Koeppel.

## B. BREACH OF CONTRACT

32.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

33.

Defendants forced Plaintiff to consent to the Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement in order to gain access to the Defendants' trading platform.

34.

Defendants breached their contractual duties and obligations to Plaintiff by failing to provide a functioning platform for Plaintiff to access their personal funds, securities and/or other property.

35.

Defendants' breach also prevented Plaintiffs from executing market securities transactions on March 2 and March 3, 2020 and during subsequent outages. This breach caused Plaintiff to miss out on some of the highest single-day market gains in recorded history.

36.

Plaintiff has suffered injuries and damages, including financial loss, due to Defendants' breach of contract.

### C.      BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

37.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

38.

Defendants breached their implied warranty of merchantability by failing to provide a trading platform/software that is acceptable and reasonably fit for the ordinary purposes for which it was being contracted, in this case, for including but not limited to: the purchase and sale of securities, transferring funds into Robinhood or transferring funds out of Robinhood.

39.

Defendants are merchants with respect to the kind of goods at issue, as Defendants are broker-dealers engaging in the securities markets.

40.

Plaintiff has suffered injuries and damages, including financial loss, due to Defendants breach of implied warranty of merchantability.

### D.      BREACH OF FIDUCIARY DUTY

41.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

42.

Defendants, at all times material hereto, owed a fiduciary duty to Plaintiff and owed him the highest good faith and integrity in performing financial services on their behalf. Defendants are a fiduciary to Plaintiff by virtue of being a licensed provider of financial services and through the Customer Agreement agreed upon between the parties.

43.

Defendants breached their fiduciary duties to Plaintiff. Defendants' breaches include, but are not limited to: failing to provide and maintain adequate systems necessary to handle an uptick in consumer traffic on its trading platform; failing to warn customers and/or users that Defendants' system and infrastructure was insufficient; failing to provide alternative means to execute trades or other transactions when Defendants' platform failed for an extended period of time; failing to comply with all applicable statutory, regulatory, and licensing requirements; failing to execute trades and other transactions on behalf of customers and/or users in violation of FINRA Rule 5310 and other applicable statutory, regulatory, and licensing requirements.

44.

Defendants' breach of their fiduciary duty was the direct and proximate cause of the damages suffered by Plaintiff, including financial loss.

**E.      NEGLIGENT MISREPRESENTATION**

45.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

46.

Robinhood through their actions and advertisements undertook to provide and did provide a platform for securities trading.

47.

Robinhood provided false and misleading information in association with its ability to handle securities transactions placed by customers and/or users. Further, based on previous outages, Robinhood knew or had reason to believe that it was unable to handle increases in securities transactions on their trading platform.

48.

Robinhood failed to use reasonable care and competence in obtaining and communicating information about their inadequate trading platform.

49.

Robinhood had a direct pecuniary interest in their customers and/or users continuing to place funds into their Robinhood accounts without knowledge of Robinhood's faulty systems.

50.

The information provided by Robinhood to Plaintiff was false and misleading.

51.

The conduct of the Defendants as set forth herein was a direct, proximate and/or contributing cause of the injuries and damages suffered by Plaintiff, including financial loss.

**F.      FRAUDULENT MISREPRESENTATION**

52.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

53.

Defendants by and through their agents, made or caused to be made, *inter alia*, the following fraudulent misrepresentations, omissions, or misleading statements to:

a. That the $838.61 offered to Plaintiff to waive his claims was simply a "goodwill credit"; and

b. Purposefully withheld from Plaintiff that there was an ongoing class action.

54.

Defendants knew that their misrepresentations/omissions were false/wrongfully misleading when they made them to the Plaintiff through the communications outlined above. Alternatively, the Defendants made these representations/omissions with a conscious disregard of the rights and interests of Plaintiff, and for the purpose of enriching themselves and jeopardizing the financial well-being of Plaintiff.

55.

The Defendants acted knowingly, oppressively, and with the intent to defraud the Plaintiff.

56.

Defendants intended for Plaintiff to rely on each of these misrepresentations and/or omissions in order to get the Plaintiff to accept the $838.61 in exchange for waiving their legal rights to pursue further claims.

57.

Plaintiff justifiably relied on each of these misrepresentations and/or omissions made by Defendants due to Defendants' willful and strategic vagueness and concealment of the waiver provision of the wrongfully categorized "goodwill credit."

58.

Defendants' conduct as set forth herein was a direct, proximate and/or contributing cause of the injuries suffered by Plaintiff.

## G.     GROSS NEGLIGENCE

59.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

60.

Defendants created a series of circumstances which, together, constituted an imminent or clear and present danger amounting to more than the usual peril.

61.

Defendants were aware of the imminent danger. Specifically, Defendants were aware that their trading platform and infrastructure was not properly equipped to support an increase in customer engagement on their platform if the stock market were to exhibit a high volume trading day. Moreover, Defendants failed to provide an alternative means to place trades when their existing platform experienced multiple extended outages.

62.

Defendants' omissions occurred in a manner which demonstrated a conscious disregard for the consequences. Defendants' omissions were an extreme departure from the standard of care that is required in the industry. Defendants effectively abandoned their customers on one of the highest volume trading days the stock market has ever experienced.

63.

Defendants' grossly negligent and conscious disregard of their duty to protect their customers' and/or users' assets was the direct and proximate cause of the damages suffered by Plaintiff.

## H.     VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.*

64.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

65.

The California Legal Remedies Act ("CLRA") Civil Code Section 1750, *et seq.*, was drafted and enacted to protect consumers from unfair and deceptive business practices. The CLRA sets forth a list of unfair and deceptive acts and practices in Civil code § 1770.

66.

The CLRA applies to Robinhood's conduct described in this action because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code § 1761.

67.

At all relevant times, Plaintiff was a "consumer" as that term is defined in Civil Code § 1761(d).

68.

Robinhood's practices with regard to its marketing and sale of financial services violate the CLRA in, but not limited to, the following ways:

a.  In violation of § 1770(a)(5), Robinhood knowingly misrepresented its services;

b. In violation of § 1770(a)(7), Robinhood represented its financial services to be of a particular standard, quality, or grade, but were not; and,

c. In violation of § 1770(a)(9), Robinhood knowingly advertised its financial services with the intent not to sell and perform the services as advertised.

69.

As set forth above, Robinhood's services are deceptive and misleading to reasonable consumers in violation of the CLRA because it failed to disclose that its platform was inadequately built and maintained to handle consumer demand; because Robinhood failed to provide adequate technological systems necessary to perform under the contract with users; because Robinhood failed to provide services when an outage occurred due to a lack of infrastructure and alternate means for users to place timely trades; because Robinhood failed to provide access to its financial services in a timely manner; because Robinhood's platform was subject to and did experience substantial outages that prohibit the Parties from performing a timely manner (or at all) under the contract; because Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and because Robinhood failed to exercise trades and actions requested by users in a complete and timely manner (required by FINRA Rule 5310).

70.

Robinhood's conduct described herein was undertaken in transactions intended to result in, and which did result in, the purchase of its financial services by consumers, which caused harm to Plaintiff who would not have used Robinhood's services had he known the truth. Plaintiff in fact injured by losses incurred due to Robinhood's deceptive conduct.

71.

The CLRA is by its express terms a cumulative remedy such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in other counts of this Amended Complaint. *See* Cal. Civ. Code § 1752.

72.

In accordance with Civil Code § 1780, Plaintiff seeks injunctive and equitable relief for Robinhood's violations of the CLRA necessary to bring it in compliance with the CLRA by, among other things, disclosing that its services are substandard and unable to fulfill reasonable consumer demand, by correcting its services to that its platform can perform as necessary to comply with its legal, regulatory, and contractual obligations, and making consumers whole for their losses.

73.

In accordance with Civil Code § 1780, the Plaintiff served a notice pursuant to Civil Code § 1782, via a certified letter, return receipt requested, requesting appropriate relief on or about April 1, 2020. Should Robinhood fail to respond to Plaintiffs' CLRA demand in a satisfactory manner, Plaintiffs will further amend this Amended Complaint to seek damages after expiration of the notice period.

### I. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

74.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

75.

Robinhood has engaged in unfair competition within the meaning of California Business and Professions Code §§ 17200, *et seq.*, because Robinhood's conduct is unlawful, unfair and fraudulent as herein alleged.

76.

Plaintiff and Robinhood are a "person" or "persons" within the meaning of §17201 of the California Unfair Competition Law ("UCL").

77.

The UCL prohibits any unlawful, unfair or fraudulent business practices or acts. Robinhood's conduct, as alleged herein, constitutes and unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement, and sale of its services.

78.

Robinhood's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described herein, violated the UCL's unlawful, unfair and fraudulent prongs.

79.

**Unlawful Prong:** Robinhood's conduct, as described herein, violated the UCL's unlawful prong because: (1) it violates the CLRA in connection with the sale of goods and services; (2) constitutes a breach of contract and/or a breach of the implied covenant of good faith and fair dealing; (3) constitutes a breach of fiduciary duty; (4) constitutes negligence and/or gross negligence; (5) it violates FINRA Rule 5310 which requires best execution of orders fully and promptly; and, (6) has unlawfully and unjustly enriched Robinhood.

80.

**Unfair Prong:** Robinhood's conduct, as described herein, violated UCL's unfair prong because its conduct violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA and FINRA, and because it is immoral, unethical, oppressive or unscrupulous and has caused injuries to the Plaintiff that outweigh any purported benefit. At all times relevant herein, Robinhood's conduct of misrepresenting and concealing material facts regarding its faulty infrastructure and refusal to timely perform from the Plaintiff and consumers caused them injury by inducing them to use Robinhood's services he would not have otherwise, causing losses to them. The utility of Robinhood's conduct in misrepresenting and concealing material facts from the Plaintiff is far outweighed by the gravity of harm to consumers who have now incurred losses he would not have otherwise.

81.

**Fraudulent Prong:** Robinhood's conduct, as described herein, violated UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, Plaintiff to be deceived into using Robinhood's services he would not have otherwise. At all times Robinhood has had exclusive knowledge of its substandard infrastructure that led to the outages. Plaintiff has been harmed and sustained injury as a result of Robinhood's fraudulent conduct in violation of UCL as explained herein.

Plaintiff has standing to pursue this claim because he has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have used Robinhood's services and/or placed trades and made financial transactions through those services had he known the truth, though he has an interest in continuing to use the services in the future should Robinhood fix the problems set forth in this Amended Complaint. As a direct result of Robinhood's actions and omissions of material facts, Plaintiff was unlawfully, unfairly, and fraudulently induced to make purchases and financial transactions that he otherwise would not have made; and lost their ability to make informed and reasoned purchasing decisions.

83.

The UCL is, by its express terms a cumulative remedy such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in other counts of this Amended Complaint. *See* Cal. Bus & Prof. Code § 17205. As a direct and proximate cause of Robinhood's conduct, which constitutes unlawful, unfair, and fraudulent business practices, as alleged herein, Plaintiff has been damaged and suffered ascertainable losses, thereby entitling them to recover restitution and equitable relief, including disgorgement of ill-gotten gains, refunds of moneys, interest, reasonable attorney's fees, filing fees, and the costs of prosecuting this action, as well as any and all other relief that may be available at law or in equity.

### K.     VIOLATION OF LOUISIANA'S UNFAIR TRADEPRACTICES AND CONSUMER PROTECTION LAW, LA. R.S. 51:1401, *et seq*.

84.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

85.

The Louisiana Unfair Trade Practices and Consumer Protection Law prohibits "[U]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…" Louisiana Revised Statutes 51:1405.

86.

Plaintiff represents he is a "consumer" as that term is defined in Louisiana Revised Statute 51:1402.

87.

Plaintiff has standing to pursue this claim as he has suffered substantial injury in fact and have lost money or property as a result of Defendants' actions as set forth herein.

88.

Defendants have engaged in, and continue to engage in, unconscionable acts or practices and used unfair or deceptive acts and misrepresentation in the conduct of its trade and/or commerce in the State of Louisiana.

89.

Defendants' business practices, as alleged herein, are "unfair" because they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to their customers and/or users. Specifically, Defendants' conduct is unfair because Defendants strategically and purposefully misled customers and/or users into believing that their trading platform was capable and powerful enough to handle the millions of Robinhood users and reasonable trading volume related to the same.

90.

Furthermore, Defendants' business practices, as alleged herein, are "deceptive" because they are likely to deceive consumers, including Plaintiff.

91.

The policies, acts, practices, and promotions alleged herein were intended to result and did result in the luring in of customer monies to be placed in Robinhood accounts. Robinhood advertised and promoted a robust securities trading platform in an attempt to accumulate more and more customer cash and users, from which Robinhood benefits.

92.

Robinhood took advantage of the trust and confidence of Plaintiff, and deceptively advertised their system as a trustworthy trading platform even though Robinhood had full and exact knowledge of their systems prior failures and inability to handle reasonable user trading volume.

93.

Robinhood's conduct of misrepresenting their flawed trading system to Plaintiff misled Plaintiff into believing that the Robinhood trading platform was a safe and able system to house their own personal monies and securities.

94.

Plaintiff sustained damages, including an ascertainable loss of money and property, as a direct and proximate result of Defendants' unfair and unconscionable practices. Louisiana Revised Statute 51:1409 provides Plaintiffs a private right of action against Robinhood and entitles them to recover their actual damages, plus attorneys' fees and costs.

95.

As a result of Robinhood's unfair conduct and deception, Plaintiffs and the Class they seek to represent have been damaged in that Defendants' inept system caused Plaintiff's personal finances to be held hostage on multiple dates and times between March 2, 2020 and March 9, 2020. This unconscionable locking up of customer finances caused Plaintiffs and Class members damages.

96.

Plaintiff would have never entrusted their personal finances with the Defendants had the Defendants been honest, truthful, and forthcoming in regards to their known system failures and shortcomings.

97.

Defendants' wrongful business practices alleged herein constitute a continuing course of unfair competition because Robinhood marketed or sold their Robinhood trading platform in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to its customers and/or users. Plaintiff has been damaged by Defendants' deceptive and unfair conduct in that they entrusted and utilized Defendants' ineffective securities trading platform that they otherwise would not have used had Defendants not misrepresented the product.

98.

Plaintiffs and the Class they seek to represent have suffered and will continue to suffer irreparable harm if Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

## J.    DECLARATORY JUDGMENT

### 99.

Plaintiff reiterates, adopts, and incorporates the allegations of paragraphs 1-28.

### 100.

Plaintiffs request a declaratory judgment under Fed. R. Civ. P. 57 and 28 U.S.C. 2201.

### 101.

An actual controversy has arisen in regards to Plaintiffs' allegations that Defendants were not in compliance with their obligations under the Customer Agreement, FINRA Rule 5310, and do not maintain an adequate infrastructure to provide the financial services in a timely manner as it is required by applicable statutes and regulations.

### 102.

Plaintiff requests a judgment declaring, among other things, that Defendants have an ongoing legal duty to comply with the Customer Agreement and various regulatory and statutory requirements, which require Defendants to maintain an adequate infrastructure to handle consumer demands and execute trades and other transactions in a timely manner.

### 103.

Furthermore, Plaintiff requests a judgment declaring that Defendants breached the aforementioned legal duty by failing to reasonably ensure that he had an adequate infrastructure in place to prevent the extended outages suffered by their trading platform.

## DAMAGES

### 104.

As a result of the foregoing acts and/or omissions of Defendants, plaintiff has directly and proximately suffered damages, including, but not limited to, past and future financial losses, emotional distress, and others to be proven at trial.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sidney B. Koeppel, prays that Defendants Robinhood Markets, Inc., Robinhood Financial, LLC, and Robinhood Securities, LLC, be duly cited to appear and answer same and that, after expiration of all legal delays and due proceedings be had, there be judgment rendered in favor of Plaintiff Sidney B. Koeppel and against Defendants Robinhood Markets, Inc., Robinhood Financial, LLC, and Robinhood Securities, LLC, in an amount that will fully compensate Plaintiffs, together with legal interest thereon from the date of judicial demand until paid, punitive damages, compensatory damages, injunctive relief, all costs of these proceedings, attorneys' fees and costs, and all general and equitable relief to which Plaintiffs are entitled by law, and which this Court deems fit and proper.

*(Signature on subsequent page)*

Respectfully Submitted,

**KOEPPEL CLARK**


*/s/ Peter S. Koeppel* _____
**PETER S. KOEPPEL (LSBA #1465)**
**W. SCARTH CLARK (LSBA#22993)**
2030 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 598-1000
Facsimile: (504) 524-1024

*Attorneys for Plaintiff Sidney B. Koeppel*